## Morrellville Deposit Bank, Appellant, v. Royal Indemnity Co.

Argued October 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Alvin Sherbine,* with him *Henry W. Storey, Jr.* and *Percy Allen Rose,* for appellant.—The bank directors were honest and did not practice fraud or bad faith: U. S. Fidelity & Guaranty Co. v. Bank, 84 N. E. 670; Fidelity & Deposit Co. v. Courtney, 186 U. S. 342; First Nat. Bank v. U. S. Fidelity & Guaranty Co., 137 N. W. 742.

In its most general sense the word "loss" means any deprivation; in some cases it may mean that which never can be recovered, and in some others that which is simply withheld or that of which a party is dispossessed: Shafer v. Senseman, 125 Pa. 310; Foehrenbach v. T. & T. Co., 217 Pa. 331.

As the policy was written and compiled by the company, it is to be construed and interpreted most strongly against it: Guaranty Co. v. Bank & Trust Co., 183 U. S. 402; American Surety Co. v. Pauly, 179 U. S. 133; Bole v. Ins. Co., 159 Pa. 53; Bone v. Ins. Co., 261 Pa. 554; Trexler Lumber Co. v. Ins. Co., 289 Pa. 13.

The stipulation being ambiguous, doubtful and admitting of two meanings, the construction of the policy was a question for the jury under all the evidence: Campagna v. Ziskind, 287 Pa. 403; Coventry, etc., Ins. Assn. v. Evans, 102 Pa. 281.

*Russell R. Yost,* of *Graham & Yost,* with him *I. Morton Meyers,* for appellee.—Appellant is not entitled to recover because notice of loss was not given as required by the policy: Foehrenbach v. T. & T. Co., 217 Pa. 331.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1928:

This is an action by plaintiff bank on a policy of indemnity to recover the loss sustained by the fraud and dishonesty of its cashier. The policy covenants that defendant will make good to the bank such loss of money as it shall sustain "by any act or acts of fraud or dishonesty, including forgery, theft, embezzlement, wrongful abstraction or misapplication" by any person in its employ while occupying among others the position of cashier. The trial resulted in a verdict for plaintiff for $12,332.34. Judgment was entered for defendant notwithstanding the verdict and plaintiff has taken this appeal.

While a number of questions arising out of the terms of the policy have been argued, a single provision thereof is controlling against plaintiff in our opinion, as it was in that of the learned trial judge. The contract provides: "Notice shall be delivered to the company...... as soon as possible after the insured learns that a loss has been sustained." Several months prior to January, 1921, the directors and officers of the bank became suspicious of the cashier's integrity and a firm of accountants was employed to make an audit. Their report of the examination was delivered to the bank officials on January 7, 1921, and disclosed that the cashier had been making loans to persons who were financially irresponsible without the consent or knowledge of the bank's officers or directors, contrary to its by-laws, and to the instructions which he had received, and that he had benefited personally by the transactions. Notice of the cashier's fraud and dishonesty was not given to defendant until May 11, 1923, more than two years after the directors knew of it, and more than five months after they discovered notes in the bank forged by him amounting to over $5,700. Does this long delayed notice meet the requirement of the policy? We are of opinion that it does not.

Appellant's counsel urge upon us that notice was not required until the entire actual loss had been ascertained and that this could not be arrived at before the time it was given, as, in the interval between the discovery of the cashier's delinquencies and the date it was forthcoming, he and his friends were endeavoring to repay to the bank the sums which had been fraudulently abstracted from it; that notice need not be given when discovery is made of the employee's dishonest act, but only after he had finally failed to make his defalcation good. Appellant would construe the language of the policy not as it is expressed, "as soon as possible after the insured learns that a loss has been sustained," but as though it read: "as soon as possible after the insured learns what the exact amount of the loss is which the insured has sustained." They argue that the word "loss" means the sum ascertained and fixed at the end of the efforts toward restitution.

The purpose of the contract was to safeguard the bank from loss through dishonest employees, its manifest intent that, immediately the bank was apprised of any act of dishonesty, it should notify the insurance company so that the latter might possess the knowledge which the bank had, and take steps, if possible, to minimize its own loss. "It is very usually stipulated in fidelity policies or bonds that the insured shall notify the insurer of any act of dishonesty or infidelity or other default involving a loss under such contracts, or of any loss resulting therefrom, immediately or as soon as practicable, and the failure of the insured to comply with such a requirement will defeat a recovery": 25 C. J. 1100, and cases cited. But the bank, knowing of acts of dishonesty, continued the cashier as an employee and as a director in the hope that he would repay some or all of the misappropriated funds; it thereby not only prejudiced the position of defendant as to the loss then made, but thus afforded the cashier opportunity to abstract more money and thereby to increase the amount for

which the bank seeks to hold defendant liable. This conduct on the part of the bank runs afoul of another provision of the policy that the insurance shall terminate "As to any employee, upon discovery of a loss through or on account of that employee." Had the bank promptly given notice when it first acquired knowledge, this limitation upon appellee's liability would have come into operation and it would not have been faced with a demand for the larger sum growing out of the cashier's subsequent criminality.

Appellant points to dictionary and other definitions of the word "loss." However they may be worded, the incontrovertible fact is that the bank necessarily knew that it had sustained a loss when its funds had gone out on unauthorized, worthless and forged paper, which would be total unless it was reimbursed; what it did not know was whether there would be reimbursement. It could not remain silent as to the insurance company and speculate to its defaulting cashier's advantage in the matter of his paying the money back. As to the forged notes, we think it cannot be seriously argued that they did not necessarily involve a loss. Notice was not given for five months after these dishonest and criminal acts of the faithless cashier were discovered.

If appellant's theory as to the construction of the notice clause should be adopted, then an insured under such a policy might take years in the endeavor to recoup its losses and be unsuccessful, and, at the expiration of a long period,—when it would be too late for the insurance company to do anything to safeguard itself, indeed, in cases where the fraudulent acts were criminal, too late to begin criminal proceedings against the wrongdoer,—call upon the company to make good to it what it was out of hand. Such a construction of the policy cannot be approved for the reason that it is inconsistent with its express terms.

The judgment is affirmed.